We will proceed with United States of America v. Henco Holding Corp. Mr. Carpenter, you may proceed when you're ready. Thank you and good morning, Your Honors. May it please the Court, the central dispute in this case about section 6901 of the Internal Revenue Code was settled almost 90 years ago when the the statutory language in latent and held that it did not take away the government's right to proceed against transferees by suit. Now the district court below in this case held the opposite that the government is barred from proceeding by suit against the transferees here who are the former shareholders of Henco Holding Corporation. The court held that we're barred from proceeding against them by suit because the government did not follow the procedures of section 6901. In the district court's view, 6901 prescribes the government's sole remedy against transferees of a taxpayer's assets and requires an administrative assessment against them before suit. But that's the very interpretation of the statute that the um and and since the district court's dismissal of the government's claims flatly contravenes binding Supreme Court precedent, this court should reverse that dismissal and remand for for the proceedings on the merits. And really, yes, Counsel Judge, may I ask you a question? In many of the cases cited, including the the owners of the entity taxpayer at issue had direct or secondary liability for the entity's tax liabilities. Does it matter that Henco is a corporation with limited liability for its shareholders under Georgia law? No, it doesn't. It doesn't matter. The liability of the shareholders here as, as the transferees of fraudulently transferred assets, that liability is no more or sorry, no less, you know, secondary or direct than the liability of of the shareholders in in Layton or in the Holmes case in the 10th Circuit or any of the other cases that have followed the rule of Layton that we cited in our briefs. They're there. It's a derivative liability based on the taxpayer's own liability. And it's it's just as automatic or secondary as as any other state law liability or as under any other state law that imposes liability for the primary debt. It's Judge Anderson. It is probably precisely like the liability in Layton, but it's certainly not like the liability in Galati, where the general partners were automatically liable. So there's a little difference between the liability here and Galati, although probably no difference between the liability here and in Layton. Is that correct? Yes, I would agree with that, Your Honor, that the liability of partners for the partnership taxes is a bit different. And that was the situation in Galati. But in terms of the other cases that are dealing with Section 6901, Layton, Holmes and all of those other ones, it's the same. You know, in fact, the former Fifth Circuit in Ferdinand addressed this very same kind of action, an action against taxpayers' transferees under state fraudulent transfer law. And the once the once the tax has been assessed timely, that the United States may collect the tax from the transferees by suing them under state fraudulent transfer law at any time within the 10-year collection period under Section 6502A. Counsel, let me ask you a separate question, which is, here we're proceeding under the motion to dismiss so that the district court dismissed the case under the 12B6 standard, correct? Yes, I'm sorry. Yes, yes, that's correct. Yes. So the allegations of the complaint have to be taken as true. Has to be taken as true. And the complaint you allege that they are transferees. That is correct. Yes, yes. And there is a there is sort of a substantive question that going to the merits that they certainly would be a free to raise on remand as to whether they are. That's what I wanted to ask. That so if we were to agree that Layton applied, they would not be foreclosed from challenging the allegation that they are transferees? Absolutely not. No, they'll be free to raise, you know, any and all defenses that are available to and that would that would certainly be one. And if they prevailed on showing that they were not transferees, then would you agree that the assessment would have to be within the three-year period of 6901? Well, if they were not transferees, I mean, not 6901, but the other statute, 6501? No, 6502. No, that's a 10-year period. Well, yes. So if they're not transferees, then they aren't liable for HENCO's tax debt. So really, it wouldn't matter. You know, the government can't collect. If they're not whether it proceeds under sort of the administrative process of 6901, or whether, as we've done, proceeded by suit under 6502. Either way, if they're not transferees, then we can't collect the debt and we lose the case. So that's an issue that would be litigated on remand. So let me back up just a little bit. We've alleged that the shareholders in this case knowingly entered into a scheme to enrich themselves by depriving the government of taxes that were owed by their corporation, HENCO. And as a result, HENCO was drained of assets. And this type of situation is common. It's not unusual for taxpayers to transfer away their assets to prevent them being collected for taxes. And the government's ability to proceed against those transferees by suit outside the procedures of section 6901 is really critical to its ability to collect taxes. So the district court sort of rejection of the rule of latent has potentially broad implications. It's not just in sort of this narrow, these mid co-tax shelter cases. In many cases, the government doesn't even find out about doesn't find out that the taxpayers transferred its assets to someone else until the time for making an assessment under 6901 has already expired. And so oftentimes, the government's only option is to proceed by suit. Latent established long ago that the government can do that. Ferdinand establishes the time in which the government can do that. And that's the 10-year period after assessment of the tax. And in this case, there's no question that the tax was timely assessed. Henco's taxes were timely assessed, and that the government brought this action within the applicable 10-year period. This is Judge Anderson. 40 years ago, when I was practicing law, there was a section 337 that allowed a corporation to sell its assets and then liquidate within 12 months and avoid the corporate tax. It is the corporate tax, which they were trying to avoid here, was it not? That's correct. Yes, it was the corporate tax that they were avoiding. Essentially, they wanted... Sorry, go ahead. Does 337 no longer exist? I am honestly not sure. I don't believe there's currently any dispute that Henco owes the taxes. But they would be able to raise that on remand unless there's an estoppel that could apply potentially. But other than that, that's an issue that could be litigated on remand. And of course, if they did not liquidate within the 12 months, they wouldn't qualify for 337 anyway. But what I'm thinking is, why in the world would they go through that shenanigans of that transaction when there was 337 readily available? Yes, and I'm afraid I'm not familiar with 337, so I don't know that I can answer that. But they certainly are not the only taxpayers who went through those shenanigans. We've cited a number of these other cases involving essentially the same kind of transaction. It was a transaction that was marketed by promoters to these closely held companies where the shareholders essentially wanted to cash out in the corporation. But if they did that, the corporation would have a big tax bill because its assets had depreciated and the shareholders wanted to get more than really what the company was worth if the company paid its taxes like it should have. So this is a fairly common situation. So let's see. The other point that I would make is two minutes remaining. Thank you. In that case, I'll reserve my remaining two minutes for rebuttal. Thank you. All right, counsel. So you have reserved 10 minutes for rebuttal, and we will hear from Mr. Rollins. Your honors, may it please the court. I'm Anthony Rollins, and along with my partner, Jason Bell, we represent the appellees, Alfredo Caceres, Luis Alfredo Caceres, Luis Angel Caceres, and the Luis Angel Caceres Charitable Remainder Unit Trust. The one fact the appellant has glossed over is that the appellee's sale of stock to this unrelated third party occurred 21 years before this claim was filed. 21 years before they were sold their stock, the Caceres' paid the capital gains taxes on the sale of stock, and the new owners of Henco acquired a company with enough money to pay its corporate tax liabilities. But nearly 21 years after the sale, the Department of Justice brought the instant claim against the Caceres'. During that 21-year period, the Caceres' were never proposed, the IRS never proposed to assess the Caceres'. The IRS never provided the Caceres' with notice of proceedings against Henco, but during that 21 years of inaction, the tax liability of Henco grew from $11 million to $56 million, and the Caceres' could do nothing about it. The government's presented an argument that was rejected by the district court, that they're not bound by the restrictions of the Internal Revenue Code that require an assessment against an alleged transferee, and can simply sue a third party to pay the debts of another in any situation. They've argued that exceptions to the clear language of the code, but Judge Pinnell found that the claim doesn't fit within any existing exception. Counsel, you mentioned the equitable considerations about this delay, and the penalties and interest that built up. There's a footnote in Galati, uh, at page 1552, footnote one, that declines to address whether or not the assessment against the partnership suffices to trigger liability against the partners for interest in penalties. That is not, has not been briefed in our case, and I suspect even if we decide against you and reverse the district court, we would similarly reserve that issue for later discussion and litigation. Furthermore, in this 12B6 posture, the complaint alleges that you had knowledge of the risk involved in this transaction, so will we not have to assume that at this stage? For the purposes of this, of us here today, yes, we have to assume the fact is alleged in the complaint. It is also in the record that the IRS did not issue any notices to taxpayers regarding this type of transaction until three years after the Cacereses entered the transaction. The Cacereses, it's also in the record, relied upon the advice of a national law firm at the time they entered into the transaction, and it's certainly in the record that the Cacereses had no opportunity to intervene in any of the proceedings against TENCO to argue any defenses. They are now foreclosed from doing any of that. They wouldn't get the opportunity to contest the penalties. That's what I'm saying. The Galati footnote suggests that you may yet have an opportunity to contest the penalty and interest. The Galati case, Your Honor, is a partnership case, and it's kind of a red herring to everything we're doing today because partners pay the taxes of partnerships. Partnerships, if assessed, the tax goes out to the partner, and there's a whole body of case law about whether or not defenses, the penalties, are inside the partnership or outside the partnership defenses. That certainly was an issue in Galati that could have been raised or potentially been raised. That's not an avenue available to the Cacereses. We have been sued under Section 6502 of the Internal Revenue Code and the Georgia Fraudulent Transfer Act to collect the taxes that were assessed against another. We have no way to contest the underlying tax. The government argues we are stopped, and as far as we're aware, there is no case law that supports the argument that we can fight the underlying tax or the penalty at this point in time. Counsel, may I ask you a question regarding lading? In your brief, you argue that even if lading does apply, it should be limited to when owners of entities are primarily or secondarily liable for the assessed tax liability. But lading doesn't mention this theory, so why should we use that limitation into lading? Well, there's two issues that come up in lading. The one that we address on briefs that you just brought up, lading, the taxpayer, is responsible as a shareholder under the California Constitution in place at the time, and that's one of the things that this court has touched upon before when a taxpayer is liable as by operation of law. The shareholder in lading was liable by operation of law. The shareholder in lading was also in charge of the corporation, made the distribution, could have defended lading or may have defended lading, but had every opportunity to intervene in that case. That's not what happened here. Lading also relied on the 1926 Tax Act, and I know getting into legislative history on oral argument is a messy prospect, but the 1928 Tax Act revised the language, tweaked it, that appeared in the 26th Act. Lading relied on the 26th Act. The 28th Act put a final determination and said taxpayers must know there is a time when they can no longer be assessed or be liable for the taxes of another. That's exactly what's happening to the catharsis here. I'm sorry, but that was not changed in the actual language. The statute remained the same. You're talking about the legislative history. The statute added the transferee of a transferee capped all actions at three years under the 28th Revenue Act. The 28th Revenue Act, Your Honor, was passed before lading was decided, but lading did not rely on the 28th Act. It was decided... It relied on the 26th Act, right. There's kind of a strange timeline there. Now, obviously, we don't have the ability. We're not the Supreme Court of the United States. So, how do we distinguish lading in this case? I mean, in Hall, this court made very clear that there are actions where it is being brought against the successor by operation of law. In those situations, 6502 can be applied. We are not liable by operation of law. Conceivably... But the problem is that, again, as Judge Anderson pointed out, procedurally, we're here on a 12B6. So, we have to take all the allegations of the complaint as true, and the government is alleging that your clients are transferees. And under the transferee statute, there doesn't have to be a separate assessment. And I believe there's the case that Judge Justice Thomas wrote. And I can't remember the name right now of the case. I think it was Galletti. In that case where he talks about that there doesn't have to be a separate assessment. Certainly under Galletti, because, again, that's a partnership case, and partnership taxes are paid by the partners. It's well-established. You don't have to assess a partner for the taxes of a partnership. It would be a duplicative assessment. Counsel, this is Judge Anderson talking. You tried to distinguish Layton by pointing out the constitutional provision there that, in effect, made shareholders just like general partners. But the Supreme Court in Layton did not cite that and did not, according to the government, it was not even briefed to the Supreme Court. So, the Supreme Court was not aware of it. But even if they were aware of it, they did not resolve the case on that basis. Their rationale was that Section 280, now 6901, is not exclusive. They specifically rejected the argument that 280, now 6901, was the sole remedy and held that the preceding case law, like Updike, which allowed this kind of equitable proceeding to hold a transferee from a corporation liable for the corporate tax if the tax was timely assessed against the taxpayer corporation. Is that not true? So, the rationale of Layton simply does not take into consideration your argument about the constitutional provision in California. Your Honor, Layton's a two-page decision, so it's hard for us to derive what exactly the Layton court was thinking and when it reached that conclusion. But those taxpayers were liable under operation of law for the debts of the corporation at the time. There's not a discussion like we would expect to see in more recent jurisprudence as to how the court got there. The court expressly rejected the argument that Section 280 was the sole remedy, did it not? It did, Your Honor, and we don't contest that current Section 6901 is the sole remedy available to the government. While the language in the statute, the government shall proceed in that fashion, the courts have carved out exceptions, and there are numerous exceptions. But all those exceptions exist in a place where either taxpayers are per se liable, or as Hall said, liable by operation of law, or that the taxpayers received assets in trust of the corporation, a trust theory. There's simply not a case, like Judge Pinnell reached in his ruling, that is on point where an exception applies that would allow... It is true, it is true that both Layton and Updike involved the liability on the part of transferees pursuant to that trust theory. But I see no substantial difference, no difference that should make a difference with respect to the applicability of 6502 between the constructive trust equitable proceeding and this fraudulent transfer equitable proceeding. Why should there be a difference? There should be a difference, and just as this court said in L.B. Castle, that there's a time and a right reserved the taxpayer gets to interject and be involved in these proceedings. I mean, this court in 2006 told the taxpayers that they cannot intervene in proceeding against the corporation because the government has to assess them and issue a proposed assessment against them, then they get the right to fight it. They get the right to be involved at that point in time. All of these other cases, there are exceptions that have been carved out, all exist in places where the taxpayer still has a right. The government cites Fernand and mentioned it in its reply brief. Fernand is important, but there's a footnote in Fernand that says there's a lien attached to the asset. So clearly they can go under 6502 when there's a lien attached. These are all exceptions, and to take a position that the government can simply sue any shareholder at any time for the liability of the corporation throws 6901 completely out. It doesn't say that there are exceptions to 6901. It says 6901 is meaningless, and all that matters is 10 years the government can proceed whenever it wants. Two minutes remaining. We just don't think that that's the law. We don't think that the law, the cases out there support it. Judge Pinnell, the district court relied upon Continental. Continental did look to the 28 legislative history, and it put a firm line in place for the transferee of a transferee. The government alleges that we are a transferee of a transferee in their alternative theory. The government never alleges that we actually received funds directly from ENCO, so we don't have to assume that we did. That's not what the government got to us. I don't know how we assume the picture is correct, but we did not receive a distribution. We sold a company which had cash in it. We received funds from the purchasing, from the purchasing, from the buyers in the purchase of the transaction. That concluded our involvement in ENCO. We had no knowledge of what was going on with ENCO. We relied upon the advice of counsel and entering into the transaction, and it was only years later we found out that the government did not like this type of transaction and found it abusive, and it was only 21 years later we found out the government wanted us to pay the taxes of ENCO, and that's clearly, clearly outside the scope of what Congress intended when it enacted 6901 and any of the courts that carved out exceptions. Thank you, Roger. It's not relevant in this case, but is Section 337 still operative? Section, there is, Section 337 is still in the code, but I don't think it's, it is not, it's a question of, it doesn't apply to these type of transactions, and it's not, I don't think, I don't think it would apply at the defense. If it does exist, Your Honor, we would certainly look to, look to any other sections of the variety of defense. We're, don't have a problem with that. 40 years ago, it provided that there could be an election under 337, and a corporation could sell all of its assets and then liquidate within 12 months, and the corporate taxes would not be due. That, that's not really relevant to our case, because nobody's argued it, and, and probably there was not a liquidation within 12 months, and, and of course, it may not be the law anymore. And, Your Honor, we don't know when the liquidation occurred. We weren't parties to that litigation. All right. Thank you, Counsel, and we will hear rebuttals from Mr. Carpenter. Thank you, Your Honors. It's certainly true that 21 years is a long time, but number one, as Judge Anderson pointed out, we've alleged that they knew the risk. In fact, we've alleged that they knew much more than that. The complaint has detailed allegations that, that they, they knew that as a result of the transaction, that HENCO's taxes wouldn't be paid. We've alleged that, that they, they knew that the transaction had no economic substance, that they knew that the, the funds they were being paid in the transaction were economically, it was economically the same as the transfer of, of HENCO's own cash. So, so the, the idea that they're sort of these innocent people that, that had no idea what was coming until 21 laters is, is not correct, according to the allegations of the complaint. We, we, similar allegations have almost every other MEDCO case, and we, we've successfully proven them in almost every other MEDCO case. But that, that remains to be seen here. So, and in terms of, yes, the tax debt has grown as a result of interest, that, but they are free to, would be free to litigate that on remand. You know, they would be free to argue that they, they shouldn't be liable for interest. We, our position would be that they are. And that, that equitable arguments will be more persuasive there. I, I don't know why. Do you know why the Supreme Court in Galati dropped that footnote that said they didn't decide about interest in penalties? Um, I, I, I don't recall specifically, um, if, if, if there's any indication of that. Uh, my guess would be that it had been, it had been litigated below, um, but, but wasn't, didn't need to be decided, um, in the Supreme Court, but I, I don't recall specifically. Um, so, but, but, you know, that's certainly, that's an argument, an issue that they would be able to, to raise on remand. Um, and, uh, so, you know, in terms of latent being distinguishable, um, Mr. Rollins mentioned again, this idea that latent was brought under the California constitution. Uh, we, we don't know where they're getting that. Judge Anderson, again, your reply brief says that, uh, that was not presented to the Supreme Court. I assumed that meant that it was not in the briefing. Is, is that correct? Yes. Yes. That's my recollection. Um, so, um, you know, in terms of distinguishing latent, um, you know, latent was brought under sort of the common law trust fund doctrine. Um, there's other cases that have followed latent, like Holmes is a state's codification of the trust fund doctrine that, you know, there's a variety of, of, uh, state and in some cases, federal laws that can a transferee liable for, uh, the tax payers, uh, debt. Uh, but the, the substantive basis of liability really has nothing to do with the, the issue under 60, the issue whether 6901 is exclusive and mandatory. Um, and, and, and latent doesn't nothing, latent doesn't turn on that. And there's no suggestion that, that, that should make a difference. Um, with regard to legislative history, to, to the extent that it matters, the legislative history that matters in this case is, is the history of, of Congress's repeated, uh, reenactment of the, of the same language that was originally in 280 and is now 6901. Um, Congress, since the late, the Congress has... Thank you. Um, I'll just conclude that Congress has reenacted that and that it therefore is, is presumed under Supreme court precedent to have, uh, to have adopted that interpretation. Thank you.